IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Baltimore Division)

| | |
|---|---|
| COUNCIL OF UNIT OWNERS OF THE 100 HARBORVIEW DRIVE CONDOMINIUM<br>100 Harborview Drive<br>Baltimore, Maryland  21230<br><br>    Plaintiff<br><br>v.<br><br>SCOTTSDALE INSURANCE COMPANY<br>One Nationwide Plaza<br>Columbus, Ohio  43215<br>P. O. Box 4110<br>Scottsdale, Arizona  85261<br><br>    Serve on:<br>    Maryland Insurance Commissioner<br>    200 St. Paul Place, Suite 2700<br>    Baltimore, Maryland  21202<br><br>    Defendant | *<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>* | Civil Action No: 21-_____ |

\* \* \* \* \* \* \* \* \* \* \* \*

COMPLAINT

The Plaintiff, Council of Unit Owners of the 100 Harborview Drive Condominium ("Harborview" or "Plaintiff"), through its undersigned counsel, files this Complaint against Scottsdale Insurance Company ("Scottsdale" or "Defendant") and for its reasons states as follows:

Parties

1. Plaintiff is an unincorporated condominium association created pursuant to Md. Code Ann. Real Property § 11-109.  It was insured under a commercial general liability insurance policy issued by the Defendant.

2. Scottsdale Insurance Company is an Ohio corporation and non-admitted insurer registered to do business in Maryland as a foreign corporation with the State Department of Assessments and Taxation and with its principal place of business in Scottsdale, Arizona and/or Columbus, Ohio.  Scottsdale insured Harborview through a commercial general liability insurance policy at all times relevant to this litigation.

Jurisdiction and Venue

3. Subject matter jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332, *et seq*. which grants this Court jurisdiction in civil actions based on diversity of citizenship where the amount in controversy exceeds seventy-five thousand dollars ($75,000).

4. Personal jurisdiction over the Defendant is proper in this Court as the insurance policy that is the subject matter of this litigation was issued in the State of Maryland and the insured events occurred in Maryland as well.  The Defendant has also agreed to personal jurisdiction in Maryland through its "Service of Suit Clause" in the policy that is the subject matter of this litigation.

5. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) which provides venue is appropriate in a jurisdiction "in which a substantial part of the events or omissions giving rise to the claim occurred…"

Facts Common to All Counts

6. Scottsdale provided commercial general liability insurance policies to Harborview Beginning on June 30, 2012.

7. Scottsdale issued consecutive annual commercial general liability policies to Harborview over a number of years beginning in 2012, the last of which was for the policy period June 30, 2019 to June 30, 2020.

8. Harborview paid all premiums required under the policies in a timely manner and was current on its premiums at all times relevant to this litigation.

9. On March 9, 2016 Harborview filed a voluntary Chapter 11 petition in the United States Bankruptcy Court for the District of Maryland, *In re Council of Unit Owners of the 100 Harborview Drive Condominium*, No. 16-13049 (the "Bankruptcy").

Facts Related to Clark Claim

10. Paul C. Clark ("Clark") is the owner of a unit in the Harborview regime known as PH4A (the "Unit").

11. Clark resided in the Unit with his wife, Rebecca Delorme ("Delorme") and his son Paul C. Clark, Jr. ("Clark Jr.") until they vacated it in March 2010.

12. Clark, Delorme and Clark, Jr. filed a number of claims against Harborview in various proceedings arising from the infiltration of water into the Unit allegedly emanating from the common elements.

13. On July 5, 2016 Clark, Delorme and Clark, Jr. (collectively the "Claimants") filed proofs of claim in the Bankruptcy (the "Clark Claim").

14. The proofs of claim alleged violations of the Fair Housing Act (the "FHA Claims") and also sought monetary relief for damage to their condominium Unit from water infiltration allegedly originating from the common elements of the condominium (the "Property Damage Claim").

15. Harborview objected to the claims resulting in a contested matter under the Federal Rules of Bankruptcy Procedure that was litigated in the Bankruptcy Court (the "Contested Matter").

16. The Bankruptcy Court issued a scheduling order in the Contested Matter.

17. The Contested Matter proceeded according to the scheduling order and the parties exchanged discovery.

18. Trial was held in the Contested Matter beginning on February 6, 2018.

19. Harborview maintained directors and officer's coverage with C.N.A. Insurance Company ("C.N.A.").

20. C.N.A. provided a defense to the Contested Matter under a reservation of rights as the FHA Claims were potentially covered under the directors and officers coverage.

21. C.N.A. defended both the FHA Claim and the Property Damage Claim as there were potentially covered and uncovered events with respect to the directors and officers policy.

22. C.N.A. retained Harborview's bankruptcy counsel to defend the Contested Matter.

23. Notice of the pendency of the Contested Matter was provided to Scottsdale on January 25, 2018.

24. Scottsdale, by letter from its counsel dated February 6, 2018 denied both its duty to defend and indemnify Harborview for the claims raised in the Contested Matter on the same day that the trial began.

25. Scottsdale claimed, as the primary basis for its denial, that the events giving rise to the Clark Claim arose prior to the inception of the initial policy issued to Harborview based on the operation of a "known loss" exclusion in its policy.

26. Scottsdale also claimed that it did not receive timely notice of the Contested Matter from Harborview.

27. Notably, Scottsdale had a representative of its in-house counsel attend each day of the trial of the Contested Matter to observe the proceedings beginning on February 6, 2018.

28. The Contested Matter was defended by Harborview's counsel who was appointed by C.N.A. and the defense was overseen and directed by C.N.A.

29. Scottsdale never requested that Harborview's counsel seek a continuance of the trial of the Contested Matter so that it could investigate the Clark Claims and either have counsel of its choosing enter an appearance in the case for Harborview or have Harborview's counsel defend the claim as C.N.A. had done.

30. Harborview made numerous efforts to settle the Contested Matter with the Claimants to no avail. In fact, on numerous occasions Harborview sought a settlement demand from the Claimants and in each case received none.

31. The FHA Claims were ultimately resolved favorably to Harborview on a motion for summary judgment in the Contested Matter.

32. The remaining Property Damage Claim in the Contested Matter was tried before the Bankruptcy Court.

33. The result of the trial of the Contested Matter was a verdict in favor of the Claimants in the amount of $750,552.

34. Absent payment of this covered liability by Scottsdale, Harborview will be required to fund the payment of the judgment through its approved Chapter 11 plan of reorganization.

35. Scottsdale denied coverage despite the fact that it suffered no actual prejudice by the allegedly late notice that it received.

36. Harborview's interests and Scottsdale's interests were completely aligned with respect to the Contested Matter in that the goal of each was to defeat or limit liability and damages claimed by the Claimants.

37. Harborview fully safeguarded Scottsdale's interests in the Contested Matter at all times.

38. The portion of the Claimants' claims potentially covered by Scottsdale's policy was property damage and related loss of use which were relatively straight forward issues.

39. C.N.A. retained Harborview's bankruptcy counsel to defend its interests with respect to the Contested Matters.

40. C.N.A. provided a defense to the Contested Matter under a reservation of rights that required it to defend all claims raised, whether or not covered in its directors and officers policy.

41. C.N.A. continued to provide a defense to the Contested Matter under a reservation of rights even after the Bankruptcy Court granted Harborview's motion for summary judgment relating to the FHA Claims.

42. C.N.A. provided a defense through the trial and on a subsequent appeal of the Contested Matter.

43. Harborview's counsel took all of the steps in defending Harborview in the Contested Matter that Scottsdale would have had to take if it retained counsel of its choosing.

44. Scottsdale would not have been afforded a better opportunity to reach a pretrial settlement in the Contested Matter as the Claimants refused to make a settlement demand despite repeated requests advanced by Harborview and C.N.A.

45. Scottsdale would not have achieved a different or more favorable result at trial of the Contested Matter had it had more notice of the Clark Claim.

46. Scottsdale never requested that Harborview's counsel seek a continuance of the trial of the Contested Matter so that it could have counsel of its choosing enter an appearance in the case.

47. Scottsdale had counsel sit in and observe the trial of the Contested Matter.

48. All fact witnesses necessary for the defense of the Contested Matter were available and called at the time of trial.

49. All expert witnesses necessary for the defense of the case were available and called at the time of trial in the Contested Matter.

50. There was extensive photographic evidence of the Unit all of which were entered into evidence at the trial of the Contested Matter.

51. There were periodic reports provided by experts for both Claimants and Harborview up to and including the time of trial in the Contested Matter.

52. The Unit had been unoccupied for the entire period of time at issue in the Contested Matter and was largely undisturbed in advance of the trial.

53. The Bankruptcy Court awarded Claimants the lowest of three estimates to repair the damage in the Unit.

54. The Bankruptcy Court did not award Claimants any of their claimed consequential damages.

55. Scottsdale denied coverage based on the "known loss" exclusion in its policy despite the fact that the evidence demonstrated that the damage to the Unit occurred after February 23, 2012 at the earliest and Bankruptcy Court found that to be the case in its ruling in the Contested Matter.

56. Harborview hired a commercial roofing contractor to replace the entire roof structure of the condominium building in 2012.

57. The contractor began work replacing the rooves over the Clark Unit in January 2012.

58. The rooves over the Clark unit were completed in February 2012.

59. Scottsdale's policy was effective on June 30, 2012.

60. The roofing contractor completed its punch list after completion of the roof replacement in July 2012.

61. Upon completion of the punch list by the roofing contractor, Harborview believed that it had resolved any leaking that had been occurring prior to that date.

62. The next time that Harborview was made aware of any leaking in the Unit was during a walk-through of the Unit with Claimants' representative on September 28, 2012.

63. In rulings on pre-trial motions in the Contested Matter, the Bankruptcy Court found that Claimants' Property Damage Claim was limited to any physical damage to the Unit that occurred after February 23, 2012.

64. The Bankruptcy Court based this pre-trial ruling on the *res judicata* effect of prior litigation by Claimants against Harborview in which they could have raised and sought recovery for physical damage to the Unit as part of the case.

65. In its Preliminary Order Regarding Creditors' Damages Claim, the Bankruptcy Court wrote, "…the Court finds that the Creditors adequately identified leaks and damage to PH4A occurring after February 23, 2012…[Harborview's] letter at a minimum suggests that, from Debtor's perspective, any leaks in PH4A emanating from the roof were repaired; thus, the leaks identified during the trial arguably were new or at least related to conduct occurring after the date of the letter—i.e., February 23, 2012." [Bankr. Ct., Case No. 16-13049; Doc. No. 862 p. 12].

### Facts Related to PH4C Claim

66. PH4C is a limited liability company whose sole member is James Ancel.

67. PH4C owned a condominium unit in the Harborview regime.

68. PH4C filed suit against Harborview in April 2015 in the Circuit Court for Baltimore City (the "Circuit Court Case").

69. Among other things, the complaint in the Circuit Court Case alleged that the PH4C unit was damaged by water infiltration at various times and from various sources.

70. Several theories of liability were advanced, and the suit sought specific performance for the repair of the common elements and the unit as well as monetary damages.

71. The complaint in the Circuit Court Case was provided to Scottsdale for consideration of a defense.

72. Scottsdale offered a defense to Harborview under a reservation of rights by letter dated July 20, 2015.

73. The defense of the Circuit Court Case was provided by Whiteford, Taylor & Preston, L.L.P. and Rees Broome, PC, Harborview's counsel that had appeared in the case prior Scottsdale's agreement to defend under a reservation of rights.

74. Scottsdale did not assign separate counsel to defend Harborview in the Circuit Court Case.

75. The Circuit Court Case was stayed after Harborview filed for bankruptcy protection.

76. PH4C filed a proof of claim in the Harborview bankruptcy (the "PH4C Claim").

77. An adversary case was initiated by Harborview in the Bankruptcy Court that, among other things, included an objection to the PH4C Claim (the "Adversary Case").

78. The claims advanced by PH4C in the Adversary Case were the same claims advanced in the Circuit Court Case as well as others.

79. Harborview defended the PH4C Adversary Case with its bankruptcy counsel together with Rees Broome.

80. Harborview and PH4C settled all matters between them including the Adversary Case in January 2018.

81. The Adversary Case was dismissed with prejudice in April 2018 per the terms of the settlement.

82. Scottsdale failed to honor its duty to defend Harborview and failed to reimburse Harborview for legal fees incurred in connection with the PH4C Adversary Case.

83. Harborview incurred legal fees exceeding $75,000 defending the PH4C Claim and the Adversary Case using its own counsel as it had prior to the dismissal of the Circuit Court Case.

## COUNT I
### (Breach of Contract Clark Claim)

84. The Plaintiff incorporates paragraphs 1 through 83 of the Complaint as if fully set forth herein and further states as follows:

85. Scottsdale's policy issued to Harborview constitutes a contract.

86. Pursuant to that contract, Scottsdale had a duty to defend and indemnify Harborview for any damages that it became legally obligated to pay as a result of a covered occurrence.

87. The claims raised in the Contested Matter are covered by the commercial general liability policy issued to Harborview by Scottsdale.

88. Scottsdale's refusal to provide a defense and indemnity constitutes a breach of its policy and has caused considerable damage to Harborview.

89. As a result of Scottsdale's breach of the insurance contract Harborview has suffered damages in the form of legal fees and an adverse judgment in favor the Claimants in the Contested Matter.

WHEREFORE, the Plaintiff demands judgment against the Defendant in an amount of at least $75,000 to be proven at trial together with interest and the costs of this proceeding.

## COUNT II
(Breach of Contract PH4C Claim)

90. The Plaintiff incorporates paragraphs 1 through 89 of the Complaint as if fully set forth herein and further states as follows:

91. Scottsdale's policy issued to Harborview constitutes a contract.

92. Pursuant to that contract, Scottsdale had a duty to defend and indemnify Harborview for any damages that it became legally obligated to pay as a result of a covered occurrence.

93. The claims raised in the Adversary Case are covered by the commercial general liability policy issued to Harborview by Scottsdale.

94. Scottsdale's refusal to provide a defense and indemnity constitutes a breach of its policy and has caused considerable damage to Harborview.

95. As a result of Scottsdale's breach of the insurance contract Harborview has suffered damages in the form of legal fees incurred in the defense of the Adversary Case.

WHEREFORE, the Plaintiff demands judgment against the Defendant in an amount of at least $75,000 to be proven at trial together with interest and the costs of this proceeding.

      /s/ James R. Schraf
James R. Schraf, 03470
Paul Sweeney, 07072
Yumkas, Vidmar, Sweeney & Mulrenin, LLC
10211 Wincopin Circle, Suite 500
Columbia, Maryland  21044
(443) 569-0755
jschraf@yvslaw.com

Counsel for Council of Unit Owners of the
100 Harborview Drive Condominium